FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT 42 U.S.C. § 1983

RECEIVED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JUN 14 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

Robert Derek Lurch Jr.
(Enter above the full name of the plaintiff in this action)

Civil Action No. 21-CV-20589(CPO)(SAK)
(To be supplied by the clerk of the  court)

V.

① County of Atlantic ② Sergeant Shung,
③ Officer Howie ④ Officer Mercado
⑤ Officer Merliro, ⑥ Officer Denson,
⑦ Officer Hubbard and ⑧ ofc. Scotto
Divetta

(Enter above the full name of the defendant in this action)

Amended Complaint

## INSTRUCTIONS – READ CAREFULLY

1. This complaint must be legibly handwritten or typewritten, signed by the plaintiff and subscribed to under penalty of perjury as being true and correct.  All questions must be answered concisely in the proper space on the form.  Where more space is needed to answer any question, attach a separate sheet.

2. In accordance with Rule 8 of the Federal Rules of Civil Procedure, the complaint should contain (1) a short and plain statement of the grounds upon which the court's jurisdiction descends, (2) a short plain statement of the claim showing that you are entitled to relief, and (3) a demand for judgment for the relief which you seek.

3. You must provide the full name of each defendant or defendants and where they can be found.

4. You must send the original and one copy of the complaint to the Clerk of the District Court.  You must also send one additional copy of the complaint for each defendant to the Clerk.  Do not send the complaint directly to the defendants.

3

How is this person involved in the case? (i.e., what are you alleging that this person did or did not do that violated your constitutional rights?)

_____

_____

-see attached-

_____

_____

C.    If there is more than one defendant, attach a separate sheet. For each specify: (1) Name, (2) Official position, (3) Place of employment, and (4) Involvement of the defendant.

4.    Statement of claims

(State here as briefly as possible the facts of your case. Describe how each defendant violated your rights, giving dates and places. If you do not specify how each defendant violated your rights and the date(s) and place of the violations, your complaint may be dismissed. Include also the names of other persons who are involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach a separate sheet if necessary.)

_____

_____

_____

_____

-see attached-

_____

_____

_____

_____

_____

_____

## Facts of Incident #1

### "The Sgt. Shirg assault"

• Due to the coronavirus pandemic, when the plaintiff was transferred to D-right of the Atlantic County Justice Facility, the plaintiff was informed that recreation runs as the following: ① one cell out (including its occupants) at a time for a hour period starting at 7am (if Im not mistaken, could be earlier) (until all of the cells were afforded recreation).

• Now on the day of the incident (Nov. 12, 2021), before my roommates were transferred to another housing unit, officer Howie accused me of calling her honey and informed me that her name is Howie.

• The plaintiff responded to her accusation by stating "Dont flatter yourself, I got a girl, I would of never called you honey."

• Officer Howie then walked past my cell, staring intently at me as she walked by. Later on that day, the cell next to me just finished their recreation period from 8pm to 9pm and due to my roommates getting transferred earlier that day, my recreation period was from 9pm to 10pm by myself (no other detainees shared the rec period with me).

• At 8:59 pm the cell next to me was locked in and another detainee was let out their cell by officer Howie instead of me (during my rec period) (9pm to 10pm) to be provided with extra food and an extra 10 minute rec period during my assigned recreation time (see Exhibits dated 6/5/24, Exhibit A) (document shows Plaintiff wasn't let out of his cell until 9:05 pm, however, even that was 5 minutes off, the plaintiff was let out his cell at 9:10 pm).

• Subsequently, at 9:58 pm officer Howie informs the Plaintiff that the next detainee needs to come out for recreation, so I have to lock in in a minute.

• When I challenged the lock in by stating "I came out at 9:10 pm, it

hasn't been a full hour yet", Officer Howie smirked and took on aggressive stance, which is what prompted me to ask her to call the sergeant for the area.

• When the sergeant came, I updated him on the situation and also made him aware that the surveillance footage of the area will corroborate everything I'm saying, he immediately became hostile, ordered officer Howie to cuff me and notified me that I'm going to the disciplinary units(High Security) in the jail.

• To avoid any further conflict, I attempted to lock-in my cell but Sgt. Shorig ran into my assigned cell and proceed to assault me while officer Howie watched smiling.

• During the course of this assault, this Sergeant punched me multiple times after I complied with his order to face the wall with my hands on the top of my head and once he was done striking me numerous times from behind while I complied with his order, he threw me to the ground and placed me in an illegal chokehold from behind, which caused me to go in and out of consciousness for a duration of 20 seconds (The Plaintiff will like the court to be aware that as soon as he was thrown to the ground, I placed both hands behind my back but was still placed in a chokehold)(also, that officer Howie witnessed the whole incident without intervening).

• Just as the Plaintiff thought Sgt. Shorig was going to choke him to death (I repeatedly told the officer I couldn't breathe twice), an abundance of ACJF personnel responded to the Plaintiff's cell and sgt. Shorig slowly took his arm from around my neck as the other officers closed in (when these officers responded, Sgt. Shorig was actively choking me out).

• Following the incident, the sergeant that assaulted me (sergeant Shorig), made up false statements along with officer Howie that served as the grounds for disciplinary charges that eventually resulted in me being placed

on high security status in the high security area of the jail for 30 days (Basically solitary confinement, high security inmates are locked in their cells for 23 hours a day.)

• while in the high security area, to add insult to injury, this officer (well sergeant) showed up to my cell to do cell inspections and when I requested that this task be carried out by another sergeant due to an obvious conflict of interest, this sergeant informed me that he is not honoring my request and told me if I continue not to comply, he will mace me without any hesitation or remorse (this event took place on Nov. 28, 2021).

• Another instance, days later, the plaintiff was accused by Sgt. Shurig (on Dec. 1, 2021) of threatening to break a sprinkler head. on this day, the plaintiff was removed from his cell in the high security units and brought to admissions to be placed in full restraints (Except for the plaintiff's facial features, the plaintiff's entire body was strapped to a metal chair to the degree, the plaintiff wasn't able to move his hands and feet).

• Hours into the punishment for making threats I didn't make, my request was honored to speak to the Lt. and Lt. Bennett came to admissions to talk with me.

• when he arrived, I inquired as to what grounds they had that justified me being placed in full restraints, he informed me I told Sgt. Shurig that I was going to break a sprinkler head if I didn't talk to an Lt. I then told Lt. Bennett that I did not interact with Sgt. Shurig at all today, "check the cameras" I stated.

• He disregarded this information and when I was released from full restraints, half a day later, I was given a ticket now stating officer Hubbard was the one I notified.

• Midway into the month of December (Dec. 14), Lt. Robinson of internal affairs came to the high security housing unit, informing the

Plaintiff that any disciplinary sanctions Imposed as a result of charges brought against the plaintiff by Sgt.Shurig Is being Lifted(dismissed or reversed) and that the plaintiff will be placed Back In general population; he further Informed me that It was audible on Sgt.Shurigs body cam when I notified sgt.shurig as he was choking me that I couldn't Breathe and IF I want to file criminal charges against Sgt.Shurig he will help me(he also Informed me that my Internal affairs complaint and my appeal was received).

Prior to moving to general population, I started the process to file charges against Sgt shurig and I requested Lt. Robinson move me to another Jail while I Initiate the criminal Prosecution of Sgt.Shurig for assaulting me on Nov.12,2021(I was In fear for my safety); However, my request was not honored.

## Failure to Intervene

### Claim

A Police officer "has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior" (Smith v. Mensinger, 293 F.3d 641).

For an officer "to be liable under a Failure to Intervene theory, the plaintiff must have demonstrated that her or his underlying constitutional rights were violated, that the officer had a duty to intervene, and that the officer must have had a realistic and reasonable opportunity to intervene" (White v. city of Vineland, 500 F.supp.3d 295).

"Thus, where a plaintiff is unable to establish a claim for excessive force, he cannot establish a claim for Failure to Intervene" (Coleman v. city of long branch, civ. a. No. 157314).

Now on the day of the Incident, it is unreasonable for the plaintiff to have expected officer howie to intervene physically or verbally, when her sergeant gave Mr. Lurch an order to face the wall of his cell with his hands on the back of his head then began striking him with closed fist to the back of his head because this event was not foreseeable due to the sergeant's prior behavior.

However, once officer howie witnessed the assault and seen the sergeant throw the plaintiff to the ground, placing the plaintiff in a chokehold from behind, this officer had a duty to intervene. Especially since she witnessed that the plaintiff was not resisting at the time he was placed in a chokehold and actually threw his hands behind his back to be handcuffed but instead was placed in a chokehold (officer howie did not intervene verbally or physically on the day of the incident).

Even IF officer Howie is not required to physically intervene, due to being a Female, this officer could have at least verbally told the sergeant to remove his hands from the plaintiff's neck, However, instead of this officer intervening, she corroborated False Facts of the incident authored by Sgt. Shorig that resulted in the Plaintiff being charged For assault on staff.

This conduct by officer Howie should not be tolerated and she should be Fired. Not olny did she allow another official to assault a non-combative detainee in her presence but the Fact that she helped them cover it up is another story in itself.

IF officer Howie would have been honest as well as the ACSF Personnel that responded to the plaintiff's cell on Nov. 12, 2021 (who saw Sgt. Shorig choking the plaintiff out), the harm the plaintiff suffered would have lessen and the plaintiff would of received Justice.

Shockingly, when the plaintiff Informed officer Howie that even though she lied in the reports, that at her deposition, she will have to tell what really transpired, she laughed and informed the plaintiff she did not witness anything, so good luck with that.

Your Honor, I don't think she understands that she is going to have to give a detailed account of what transpired inside the cell and that the account of the incident she gives has to be consistent with what is audible of the account from Sgt. Shorig's body camera Footage.

So I wish her good luck as well because its hard to fabricate Facts of an incident, when video or audio exist of the event your attempting to change the facts of.

Parties liable: (1) Officer Howie

## Violation of Liberty Interest

## Under Due Process Clause

## Of Fourteenth Amendment

The Plaintiff is also alleging that my detention in solitary confinement for 30 days violated my liberty interest under the due process clause of the Fourteenth amendment.

Now in Sandin v. Conner (515 U.S. 472), the court held that "disciplinary confinement does not create a liberty interest triggering due process protection unless the confinement imposes 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'.

Further, to determine "whether conditions create an atypical and significant hardship, courts should compare the specific conditions of the inmate's confinement to both the conditions in the general population and in other categories of segregation" (Cox, 199 F.Supp.2d at 412).

In conducting this comparison, a court considers the following factors:

(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement (Wright v. Coughlin, 132 F.3d 133).

Courts have reached different conclusions with respect to how SHU detention represents "an atypical and significant hardship" under Sandin.

Here, however, as in Greenberger v. Roundtree (2020 U.S. Dist. Lexis 8658) the only reason the Plaintiff was placed in the high security

area as a high security inmate (locked in his cell for 23 hours a day) was because of sergeant shorig misconduct (the violent assault followed by shorig's false statements giving rise to disciplinary charges, which were not vacated until after the plaintiff completed his disciplinary sentence)(identical to Id.).

as in that matter (which findings are applicable to this matter due to the similarities in the events that gave rise to the claims), the court held that even if the plaintiff spent one day in solitary confinement as a result of the prison officials misconduct that alone constitutes "an atypical and significant hardship" that states a claim for violation of his protected liberty interest and the plaintiff is alleging that these rights or protections under the due process clause of the fourteenth amendment were violated.

I will like the court to note that every disciplinary sanction that was imposed as a result of sergeant shorig misconduct was vacated by the warden of the jail in response to an appeal by the plaintiff challenging the allegations that gave rise to the charges.


Parties Liable: (1) Officer Howie and (2) Sgt. shorig

Cla. # 4

## Fourteenth amendment

### violation

The excessive use of force test for §1983 claims is applicable where an inmate was subjected to mechanical restraints after being subdue (Young v. Martin, 801 F.3d 172).

"Pretrial detainees (unlike convicted prisoners) cannot be punished at all" (Jacobs v. Cumberland county, 8 F.4th 187).

Therefore, to state an excessive force claim under the Fourteenth amendment Due Process clause, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable" (Id. (quoting Kingsley v. Hendrickson, 576 U.S. 389)).

In making the reasonableness determination, courts must consider circumstances such as:

the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the officer to temper or to limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting

(Id. at 194-95 (3d. cir. 2021) (quoting Kingsley, 576 U.S. at 397). Courts must analyze the circumstances "from the perspective of a reasonable officer on the scene" (Id. at 195).

Now on Oct 14, 2021, the plaintiff was taken to admissions and placed in an emergency restraint chair due to an ACSF employee alleging that the plaintiff threatened to break a sprinkler head.

Detainers placed in an "emergency restraint chair" are isolated and strapped tightly at the waist, with hands cuffed behind the back and legs shackled to the chair. Straps are tightly wrapped at various points across the inmate's body from head to toe for immobilization. Bornemann v. Atlantic County Dep't of Public Safety, 2023 WL 2263294).

Moving forward, the Plaintiff never communicated to anyone on the day of the incident that he is going to break a sprinkler head. Therefore, the defendants act of placing the Plaintiff in these mechanical restraints on the day of the incident was unlawful.

Lt. Bennett informed me that Sgt. Shurig stated I communicated this threat to him; however, when I informed him I'm not even on camera communicating with Sgt. Shurig, this Lieutenant appeared to be in a state of confusion.

Subsequently, when I received the disciplinary sanctions (or charges) associated with this incident, the record stated Officer Hubbard is actually who I communicated the threat to, which are both lies that led to the Plaintiff being unlawfully restrained for over 8 hours in addition.



Parties liable: ① Sgt. Shurig and ② Officer Hubbard

## Facts of the Incident

## #2

On May 6, 2022, between the hours of 12 PM to 2PM, detainees yelled out my nickname (Brooklyn) and told me I was wanted in cell #5. as soon as I entered the cell, a sheet was thrown over my head and I was assaulted until I was rendered unconscious.

When I regained consciousness, I was tied up (my wrist and ankles were bound by sheets) and I occupied the middle bunk of a cell with a towel wrapped around my head to obscure my vision.

At this time, detainees went in and out the cell (I could hear them opening and closing the cell door) but no one explained to me, what was going on?

I then heard officer Merlino yell out my name for legal mail (once), however, strangely he didn't attempt to locate me (which is usually done) and when he left the housing area, all my faith in being rescued went out the window (I screamed for help but I guess it was to no avail)(he must not have heard me).

Subsequently, detainees entered the cell and threw me off the metal bunk while I was still tied up. One of them strategically held my nose while one of them forced water in my mouth, the one that was pouring water only stopped as I began choking and when I stopped choking, they began the process again (I yelled out for them to stop, because what they were doing could kill me. but my efforts were to no avail).

After they were done drowning me (I guess), I was brutally beaten for a long period of time by at least 4 or 5 detainees. once rec was called (outside recreation) they stopped, some left the room and the ones that were remaining informed me to clean myself up after they removed

the towel that was wrapped around my head (obscuring my vision along with the restraints).

As I was cleaning myself up, I made up my mind that once I made it to the day space to where my legal work was, I would grab it and act like I was headed upstairs but instead head for the door. When I was presented with the opportunity, after grabbing my legal work, that's exactly what I did.

When I explained to the C.O. in the officer's station that I'm injured, he informed me that I will have to wait for a sergeant. The sergeant (on shift for that area on that day) arrived, asking who did it, I told him "I don't know but yall have cameras".

He then took me to the nurse's office and asked me again in front of numerous officers and detainees that were in the office, for my safety "I told him I don't remember anything" but I'll talk to him privately in the sergeant's office, when I get back from the hospital (The doctor had informed me in the nurse's office that I would be going to an outside hospital)(I didn't know if I could trust the officers or the inmates in the nurse's office from informing other detainees in the jail that I'm a snitch, which would cause me further problems later down the line).

When I got to the hospital, I was informed that I sustained two broken ribs and a host of other injuries. I was treated and brought back to the jail.

While I was healing up, I asked Lt. Robinson to be transferred out the facility due to the plaintiff's fear of his safety (of staff and other detainees), Nevertheless, I was informed by this official that without a court order, I won't be able move.

<u>Failure to Protect and Failure</u>

<u>to Intervene</u>

Under 42 U.S.C. 1983, the Plaintiff has a Fourteenth amendment due Process right as a Pretrial detainee to be Protected From harm at the hands of other Inmates.

This duty is owed to Pretrial detainees by the corrections officers that have them in their custody (Farmer v. Brennan, 511 U.S. 825).

On May 6,2022 between the hours of 2PM to 3PM this right was not afforded to the Plaintiff even though he screamed For assistance as numerous detainees went in and out the cell he was being assaulted In (which highlights the need For 3 safety measures/Policies that would of prevented the Plaintiff's constitutional right to be Protected From harm From being violated IF they were Implemented such as: ① audio surveillance of the day space thats monitored 24/7 by the officer on shift [IF the supervising officer would of heard the Plaintiff's cries in the C.O. station, he could of Provided him with assistance], ② a Policy that detainees are only allowed in their assigned cells and enforcement of that Policy [IF this Policy would of existed, officers would of been alerted to respond to the cell the Plaintiff was being assaulted in and prevented the lengthyness of the abuse that the Plaintiff endured] and ③ The Live camera Feed of the surveillance cameras located in the housing area needed to be accessible and Monitored 24/7 by the officer assigned to supervise the detainees in the C.O. station [Like it is done at Rikers Island] [which would of assisted the officer in the C.O. station in supervising the housing area along with other technologies and physical assistance]).

However, without these safety measures Implemented (even though "the County of atlantic" was clearly on notice that these safety precautions and

Policies should be implemented due to the reports generated from numerous incidents where inmates were tied up and assaulted in cells), officers in Atlantic County Justice Facility still have a duty to protect the detainees from harm in their custody.

I understand that because of the type of environment, certain incidents are going to occur and can't be prevented; however, when we review the circumstances of this matter, the court will side with the Plaintiff that even though this incident wasn't foreseeable the length of the abuse (or harm that the Plaintiff suffered) would have been substantially reduced if officers were actually doing their job on the day of the incident.

The corrections officer that was assigned to supervise the unit on the day of the incident should of been alerted due to the amount of traffic entering and exiting cells that something was going on that was not suppose to be and his negligence in not properly supervising the area allowed the Plaintiff to be brutally beaten for over an hour.

If he couldn't determine what was going on by visually inspecting the area, he could of called for assistance for officers to physically inspect cells or called the area that did have access to the live camera feed for the housing area to dispel any suspicions he may have due to the traffic by giving him their opinion as to whether anything out of the ordinary is occurring in that cell based off the traffic; yet, neither strategy was employed and when the Plaintiff reported the incident to officials on the day it happened, the officials were oblivious to what occured (even though based off the sounds of the fight, the in and out traffic in cells and the cries of the Plaintiff, everyone in the dayspace was aware of the incident).

Furthermore, during the incident, an officer by the name of Merino had mail for the Plaintiff that needed to be signed before it could be delivered and this prison official simply disregarded his duty to deliver this piece of

Mail to the Plaintiff, which also contributed to the length of abuse the Plaintiff endured because If this official would of Located the Plaintiff on the day of the Incident when he was suppose to, he would of assisted other officials In Finding the Plaintiff tied up and protected him from any Further harm.

However, this Prison official that was Informed by other officials of the Plaintiff's exact Location on the day of the Incident, went to housing area E Left (where he was Informed the Plaintiff was at) and due to him not receiving a response from the Plaintiff (when he called out his name), he simply Left Failing to Locate or even attempt to Locate the Plaintiff.

which Is Inexcusable For a couple of reasons, such as: ① Because the Plaintiff Is In the custody of these defendants (only to ensure his presence at court) they are obligated by Law to be able to account for his persons at all times, ② Once the official couldn't make contact with the Plaintiff (verbally), he was suppose to Inquire From the housing area officer whether the Plaintiff was at court or did he leave the housing area for another purpose besides court (such as Medical, recreation and places of that nature).

However, once the housing area officer would of notified the officer doing Mail that the Plaintiff didn't leave and his continued efforts to make contact with the plaintiff were to no avail, the situation should of been treated Like their was a missing detainee and assistance should of been called, so Its perplexing that this Prison official, would Just Leave the area (when he clearly couldn't Locate a detainee).

In conclusion, due to the corrections officer In the C.O. station Failure to adequately supervise, the detainees In housing area E Left and the Mail officer's complete disregard For his duties as a corrections officer, the Plaintiff was brutally assaulted For over an hour after being tied up and sustained Injuries such as broken ribs (which could of caused my Lungs to collapse) and Lacerations to my Face that required stitches and staples.

Parties Liable: (1) Officer Merlino and (2) Officer Scott Divetta

Monell claims associated with Incident #2

RECEIVED

JUN 14 2024

AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

Monell Liability

In Farmer v. Brennan, 511 U.S. 825, the Supreme Court made it clear that "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners" because corrections officers have "stripped [the inmates] of virtually every means of self-protection and foreclosed their access to outside aid".

Pursuant to 42 U.S.C. §1983, the plaintiff is alleging that my due process right to be protected from harm at the hands of other inmates was violated when I was tied up and assaulted by numerous inmates for over a hour without any intervention from prison officials.

To impose Monell liability on a municipality under 42 U.S.C.S. 1983, plaintiff must prove: (1) He had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional rights; and (4) the policy is the moving force behind the constitutional violation.

Atlantic County Justice Facility has a custom of utilizing housing areas that are not designed to accomodate a floor officer, are not equipped with audio surveillance, nor enforcement of a policy to keep detainees out of cells that are not their own and no practice of conducting regular inmate head counts/cell checks every 15 to 30 minutes to ensure every detainee in their custody is alive and well.

The preceding deficiencies in design, practices and policies was the direct cause of the plaintiff's right to be protected from harm at the hands of other inmates.

Atlantic County officials are well aware that these deficiencies could lead to serious violence against the inhabitants of the housing areas, however, these defendants willfully ignored the risk that they know many in their custody

unknowingly Faced (see Castro v. County of Los Angeles, 833 F.3d 1050).

One of the deficiencies that the more violent Inmates take advantage of, when they set out to harm another detainee Is this County's Inadequate tracking system of the detainees In their custody.

Which has Led to numerous detainees before this Incident, being tied up and tortured by other Inmates For hours without any Intervention From Prison officials (The Policy-makers of Atlantic County have been on notice due to the reports generated From these Incidents and have chosen to willfully disregard the Issue even though It places so many Lives at risk).

Implementation of certain safety measures such as: ①a correction officer assigned to visually monitor the area throughout the day (with 1 officer assigned to be In the actual housing area, physically), ②whichever Floor officer IS assigned, should be required to enforce a Policy that other detainees are not allowed In another detainee's assigned Cell (to prevent violent detainees from utilizing a Cell as a torture chamber for another unsuspecting detainee) (this rule should be enforced by mandatory cell checks along with officers making sure by visually surveying the area that no one IS violating this rule) and a host of other measures that are already Implemented at other Jails (Like having a Floor officer and another officer In a C.O. Bubble per se In that housing area monitoring the live Camera Feed of that area ensuring detainees are not up to no good that officials are not aware oF) would of prevented the Plaintiff's constitutional rights From be violated to the degree It was and also these measures would of prevented some of the Injuries that the Plaintiff sustained (IF not, all).

Currently, Atlantic County Justice Facility has a custom that once Cell doors open For morning recreation at 8am (or Lockout), detainees are not accounted For by head counts or cell checks until 3:30 pm (which Lock In and this count IS not even a visual one, officials ask whoever IS at the Cell door of each cell, how many IS In the room?).

These deficiencies make ACJF, a dangerous jail to be detained at. while the Plaintiff was being took hostage In a cell, an officer by the name of Merlino entered the housing area, calling out the Plaintiff's name for Legal Mail (at this time during the Incident, the Plaintiff was not yet Injured severely and hoped the officer would locate him as he was tied up by sheets, bounding his ankles and wrists),

However, this officer did not attempt to locate the Plaintiff (even though the Plaintiff was not at court nor outside at outside recreation) (which means he was In the housing area) and because of his failure to locate the Plaintiff, the Plaintiff was assaulted by numerous detainees for over an hour causing the Plaintiff to sustain Broken ribs and a host of other Injuries.

For the Foregoing reasons, these defendants (well, "The County of Atlantic") should be held liable for not having certain policies In effect and certain safety measures In place that would of prevented the way the constitutional violation took place and the length of the violation (even IF It would not have prevented the violation, Itself).

Parties Liable: ① "The County of Atlantic"

## Violation of 1st and 6st amendment protections

The Plaintiff's First amendment protections affords him the right to send and receive personal and legal mail without interference while incarcerated.

However, due to certain penological Interest such as maintaining security and preventing contraband from freely entering Institutions, courts have upheld the Inspection of mail, prior to a detainee (or an Inmate) receiving It

This Inspection has to be conducted In the presence of a detainee only if Its legal mail. Other than that, personal mail can be Inspected by prison officials even In the absence of the Individual receiving It.

Further, the 6st amendment affords the Plaintiff the right to access the courts. Which requires Institutions to provide the Plaintiff any tool he needs that will enable him to effectively defend himself from a criminal matter or prosecute a civil action, especially if he or she is a pro se litigant.

Denial of these rights can Inadvertently cause a person to be denied his 14th amendment right to a fair trial.

Now In the Instant matter, prison officials Interfering with the Plaintiff's right to send and receive mail (violating his First amendment rights) Is directly causing his 6st amendment right to access the courts to be violated, which In turn Is causing the Plaintiff to be deprived of his right to a fair trial, especially because the Plaintiff Is a pro se litigant (which these defendant's are aware of) (I made It clear to officer Merino, Mercado and denson that I represent myself In numerous

Legal matters in response to their questions as to why I receive so much legal mail)(The officers I named above are the Mailroom officers).

The Plaintiff was Incarcerated at Atlantic County Justice Facility For 8 months. During that time, the Mailroom officers have been Interferring with the Plaintiff's legal mail as well as his personal mail leading to several constitutional violations.

As a Pro Se Litigant, the Plaintiff has to Formulate arguments utilizing evidence he obtained through discovery to sometimes support these contentions. These defendants have prevented his ability to do so by refusing to allow the Plaintiff to receive this evidence by making up Policies that does not exist or that is actually In effect In order to prevent the Plaintiff From receiving this documental evidence through the mail.

which is causing the Plaintiff to make Frivolous arguments to the courts that defendants In other Pending Legal matters are not complying with discovery orders, when In Fact they are and the mailroom officers are sending the mail back w. thout having the courtesy to Inform the Plaintiff that they done so (see Docket entry 34, Exhibits, Exhibit B Pg. 1 of 2 and 2 of 2)(which is one of many Legal documents that the Plaintiff received that was Pertinent to a matter that was refused by this Facility without any notification given to the Plaintiff).

The Policy that was used to refuse this mail was that this Facility doesn't accept voluminous records (see Docket entry 34, Exhibits, Exhibit C [Atlantic County Justice Facility Policies pertaining to mail] Pg. 1 of 5 - 5 of 5)(no such Policy exists).

Just recently, one of the more recent study guides for the comptia exam (to be a desktop technician) was sent to me from my mother via amazon, these mailroom officials (see Exhibit A) claimed there is a Policy that Prevents a detainee From receiving a book with over 1000 pages.

However, when I addressed this to sergeant Liberty, he informed me that sergeant Johnson of classification informed him via mail that no such policy exist (which is corroborated by Docket entry 34, Exhibits, Exhibit c).

I was also informed by sergeant Liberty that under no circumstances was my legal mail suppose to be refused.

These officials violations of my constitutional rights are causing the plaintiff to suffer adverse decisions in his pending legal matters. Sleep deprivation, weight loss due to stress associated with the negative effects these violations are having on my current legal matters and the mental deterioration its causing by forcing the plaintiff to do excessive and unnecessary work such as writing motions to compel defendants to comply with discovery demands they have already complied with.


Parties liable: ① Officer Denson, ② Officer Merlino and ③ Officer Mercado

4

5.    Relief .

      (State briefly exactly what you want the Court to do for you.  Make no legal arguments.
      Cite no cases or statutes.)

① Im suing each municipality listed for 5 million dollars in compensatory

damages.

_____

② Im also suing each individual defendant listed for 5 million dollars in

punitive damages and 5 million dollars in compensatory damages

6.    Do you request a jury or a non-jury trial?  (Check only one)

      [✓] Jury Trial            [  ] Non-Jury Trial

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _____6_____ day of _____June_____, 2021

                                     _____
                                         Signature of Plaintiff

EACH PLAINTIFF NAMED IN THE COMPLAINT MUST SIGN THE COMPLAINT HERE.
ADD ADDITIONAL LINES IF THERE IS MORE THAN ONE PLAINTIFF.  REMEMBER,
EACH PLAINTIFF MUST SIGN THE COMPLAINT.

Case 1:21-cv-20536-OFFAP Document 129101 Filed 04/03/14/24 Page 26 of 28 Page ID: Page 683

## Motion to compel the defendants
### to respond to Interrogatories
### with more accurate
### responses

① Plaintiff's Question: When Plaintiff was released from administrative segregation on December 14, 2021, what housing units were available In which to place him, and of those units, what was the percentage of sex offenders?

Defendant's response: Upon the advice of counsel, objection as this request is Ill-defined and vague as phrased "administrative segregation". Notwithstanding the preceding, E-left/right, F-Left/right, G-left/right, H left/right. The The ACSF does not have "percentages of sex offender." However, all areas listed would house sex offenders. Inmates have the option to not discuss their charges with other Inmates.

Plaintiff's objection: Your Honor, Atlantic County Justice Facility has housing units on Both Floors of the Jail. In their response, these defendants are making It appear like the housing units on the Top Floor (E,F,G,H) were the only housing units to place the plaintiff In, the Plaint:FF will Like these defendants to List all of the housing units that the plaintiff could of been placed In general Population In (at the time he was released from the high security units).

Secondly, every Detainee that is admitted to ACJF is Issued an Inmate number and Filed under that number is the detainee's Personal Information and their charges. also, Every housing unit has a List that documents what detainees occupy that area (their name and Inmate numbers Included). Therefore, the Plaintiff will Like these defendants compelled to disclose the number of detainees that was charged with sex-related offenses In each housing area that was available For the plaintiff to be placed In on Dec. 14, 2021.

② Plaintiff's Question: Between November 1, 2016 and July 6, 2022, the number of Incidents where Inmates were sent to solitary due to charges of assaulting another Inmate under disciplinary codes .002, .003, or .004?

Defendant's response: Upon the advice of counsel, objection as this request is over broad and vague as phrased. The ACJF does not have "solitary" not-withstanding the preceding, the ACJF has IHL (high security status). This request would involve manually pulling each individual file of thousands of thousands of inmates to determine the requested disciplinary codes. The ACJF does not have the staffing to pull thousands of inmate files.

Plaintiff's objection: your honor, Every detainee that is sent to the high security unit of the jail was sent to that area from general population or other areas of the jail with pending disciplinary sanctions (due to the conduct they exhibited that lead to the disciplinary charges that sanctions will be imposed for).

In addition, Every disciplinary charge is documented on a disciplinary ticket with the conduct that detainee exhibited to receive the charge and other Information Like who engaged with the detainee in the act that he was charged for.

This entity does not want to provide this information for the simple fact that it will expose the deliberate indifference that Atlantic County Justice Facility officials are showing to the detainees of ACJF by not implementing certain security features that will reduce the amount of violent assaults that take place in atlantic county jail, which shows these officials are showing a deliberate disregard for the safety of Detainees in their custody.

It is critical to my Monell claim against the county of atlantic, that this information be provided. If listing the number of incidents for a 6 year period is too burdensome then the plaintiff will agree to decreasing the time frame to the following: May 6, 2021 to May 6, 2022.

I will Like this court to compel these defendants to disclose the incidents that involved 2 or more detainees assaulting an individual detainee inside a cell during the timeframe listed above (5/6/21 to 5/6/22).

ACJF officials can block out the names of the detainees, however, the plaintiff will Like the information disclosed about the incidents to include the following: ① Location of the incident, ② Date and time of the incident, ③ the manner in which the victim was assaulted, ④ the number of detainees/inmates that engaged in the assault and ⑤ whether weapons were utilized in the attack

③ The location of the plaintiff within ACJF on May 6, 2021 (at the time the mail officer was doing his rounds)?

Defendant's response: Upon the advice of counsel, objection as this request is vague and unclear as stated May 6, 2021. The complaint does not reflect an incident on this date.

Plaintiff's objection: The Defendants obviously knows your Honor that the Plaintiff was referring to May 6, 2022 and doesn't want to answer the question. I will like the court to compel the defendants to provide the Plaintiff with the location of the plaintiff within ACJF on May 6, 2022 (at the time the mail officer was doing his rounds)?

Name: Robert Derek Lurch Jr.       Date: 6/8/2024       signature: [signature]

Docket #: 21-cv-20589