**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ROBERT DEREK LURCH, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF ATLANTIC, et al., <br><br> Defendants. | Civil Action <br> No. 21-20589 (CPO) (EAP) <br><br><br> **OPINION** |

**O'HEARN, District Judge.**

In an earlier Order, the Court warned the *pro se* Plaintiff that if he once again failed to promptly notify the Court of any change to his address, it would result in the reinstatement of Defendants' motion to dismiss for failure to prosecute. (ECF No. 149, at 1). As Plaintiff failed to comply, (*see* ECF No. 152), the Defendants' motion, (ECF No. 142), is hereby reinstated. For the following reasons, the Court will grant in part the motion to dismiss.

## I.  BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this case and thus recites only the background necessary to decide the instant motion. This case arises from two alleged assaults at the Atlantic County Justice Facility, in Mays Landing, New Jersey. One at the hands of a corrections officer, and the second, by other inmates. (ECF No. 129, at 3–6, 13–14). Plaintiff names Atlantic County, Seargeant Shurig, and Officers Howie, Merlino, Mercado, Denson, Hubbard, and Scotto-Divetta as Defendants.

Plaintiff initiated this case in December of 2021. (ECF No. 1). On July 5, 2022, the Court sent mail to Plaintiff at the Atlantic County Justice Facility, which was returned as undeliverable. (ECF No. 21, at 1). The Court informed Plaintiff of his obligation to notify the Court of any changes to his address, warned that failure to do so could result in dismissal, and administratively

terminated the case. (ECF No. 25).  On August 9, 2022, Plaintiff filed a notice of change of address, (ECF No. 29), and the Court reopened the case, (ECF No. 32).

On April 23, 2023, Plaintiff was released from George R. Vierno Prison, in East Elmhurst New York, (ECF No. 54, at 1), and numerous correspondence returned as undeliverable, (ECF Nos. 55, 60, 61, 62).  The Court again terminated the case, reminded Plaintiff of his obligations to notify the Court, and warned that failure to comply may result in dismissal. (ECF No. 59).

Approximately four months later, on August 14, 2023, Plaintiff filed a notice of change of address and sought to reopen this case. (ECF No. 63).  He had been released but was rearrested and then housed at Otis Bantum Correctional Center, in East Elmhurst, New York. (*Id*.; ECF No. 65).  The Defendants opposed Plaintiff's motion to reopen. (ECF No. 64).  The Court granted Plaintiff's motion and reopened the case but admonished Plaintiff yet again and stated that if he "fails to advise the Court of a future change in address, within seven days, the Defendants may file, and the Court will consider, a motion to dismiss this case for failure to prosecute." (ECF No. 66, at 1).

On January 29, 2025, the Court ordered Defendants to contact Plaintiff's address of record, the Queensboro Correctional Facility, in Queens, New York, to arrange a conference. (ECF No. 137).  Upon contacting the facility, Defendants discovered that Plaintiff had been released months prior, on September 25, 2024. (ECF No. 138, at 1).  At that point, as Plaintiff failed to notify the Court of his changed address on three occasions, and because he failed to heed the Court's warnings, the Court terminated the case, admonished Plaintiff, and granted Defendants leave to file their motion to dismiss. (ECF No. 139, at 1–2).

Five months after his release, on February 20, 2025, Plaintiff filed a motion to reopen, confirming that he had been released and stating that he "did not feel like updating his address was

necessary because [the] facility forwards" his mail to his parole officer who then forwards it to Plaintiff. (ECF No. 143).  The Court denied the motion to reopen, explaining that it would not rely on two layers of mail forwarding and an unidentified officer to communicate with Plaintiff, and ordered Plaintiff to respond to the motion to dismiss.  (ECF No. 144, at 1–2 (advising that Plaintiff's conduct was "unacceptable" and that he wasted "both the Court and the Defendants' resources")).

On August 28, 2025, due to "Plaintiff's history of unstable housing and his recent filing of what appears to be a stable address," the Court terminated the motion to dismiss and reopened the case. (ECF No. 149, at 1).  The Court advised Plaintiff that this was "his **final** opportunity to remain compliant" with Local Civil Rule 10.1, and that "[a]ny future failure to promptly notify the Court of an address change or the loss of a permanent address, **will result in the immediate reinstatement of Defendants' motion to dismiss and dismissal of this action**." (*Id*. (emphasis in original)).  Despite that warning, on December 3, 2025, the Court sent mail to Plaintiff at his then address of record, the Adult Diagnostic Treatment Center, in New Brunswick, New Jersey, which returned as undeliverable. (ECF No. 152).  He did not file a notice of change of address until  February 13, 2026. (ECF No. 154).

Now before the Court is the Defendants' reinstated motion to dismiss. (ECF No. 142).  Plaintiff filed oppositions, (ECF Nos. 145, 155, 156), and Defendants filed a reply, (ECF No. 147).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 41(b), if a "plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  When determining whether to dismiss an action pursuant to Rule 41(b), the Court must

consider the factors discussed in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). Under *Poulis*,

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868 (emphasis removed). No single factor is dispositive, nor do "all of the . . . factors need to be satisfied in order to dismiss a complaint." *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (cleaned up); *see also Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 132 (3d Cir. 2019). "Ultimately, the decision to dismiss constitutes an exercise of the district court['s] discretion." *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992); *see also Aruanno v. Johnson*, No. 21-1652, 2022 WL 604051, at *2 (3d Cir. Mar. 1, 2022). "[D]ismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Poulis*, 747 F.2d at 866 (cleaned up).

Finally, although *Poulis* involved dismissal with prejudice, a court must consider the *Poulis* factors when dismissing a case without prejudice, if the statute of limitations has run on a plaintiff's claims.[1] *Hernandez v. Palakovich*, 293 F. App'x 890, 894 n.8 (3d Cir. 2008); *see also Harrison v. Coker*, 587 F. App'x 736, 740 n.5 (3d Cir. 2014).

---

[1] As the events in the Second Amended Complaint took place in in 2021 and 2022, (*see* ECF No. 129, at 3, 13), absent equitable tolling, the statute of limitations has likely run on Plaintiff's claims. *See Brown v. Quinn*, No. 20-7002, 2022 WL 17959508, at *2 (D.N.J. Dec. 27, 2022) (citing N.J. Stat. § 2A:14-2; *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014)) (explaining that although 42 U.S.C. § 1983 provides a federal cause of action, "§ 1983 borrows the statute of limitations from the laws of the state in which the action arose," and in "New Jersey, the statute of limitations for personal-injury torts is two years").

### III.  DISCUSSION

#### A.  The Extent of a Party's Personal Responsibility

The first *Poulis* factor requires courts to consider "whether the party bears personal responsibility for the action or inaction."  *Hildebrand*, 923 F.3d at 133 (quoting *Adams v. Tr. of the New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994)).  Here, Plaintiff is proceeding *pro se* and is therefore solely responsible for failing to comply with the Court's rules and orders.  *E.g.*, *Briscoe*, 538 F.3d at 258.  As discussed above, Plaintiff's failure to properly notify the Court of his address repeatedly caused this action to sit at a standstill, despite numerous warnings and admonitions from the Court. (*See* ECF Nos. 25, 59, 139, 149, 152).  While the Court recognizes the difficulties of unstable housing, Plaintiff cannot ignore the Court's rules and orders and litigate this case at his leisure.  Furthermore, Plaintiff admits he was aware of his obligation to do so but did not "feel like" complying. (ECF No. 143).  Accordingly, the first factor weighs in favor of dismissal.

#### B.  Prejudice to the Defendants

The next factor, prejudice to the Defendants, "is a particularly important factor . . . and evidence of true prejudice . . . bear[s] substantial weight in support of a dismissal." *Hildebrand v*, 923 F.3d at 134  (cleaned up).  "Relevant examples of prejudice include the irretrievable loss of evidence and the inevitable dimming of witnesses memories." *Id.* (cleaned up).  A party is not required "to show 'irremediable harm' for the prejudice to weigh in favor of dismissal." *Id.* (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)).  For these purposes, "impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Ware*, 322 F.3d at 222; *see also Hildebrand*, 923 F.3d at 134.  Courts may also find that a plaintiff's failures to prosecute or follow court orders are "inherently prejudicial" by halting the progress of an action. *E.g.*, *Emerson v. Thiel College*, 296 F.3d 184, 190–91 (3d Cir. 2002);

*Brooklyn Waffles, LLC v. Silk City Snacks LLC*, No. 20-15846, 2022 WL 2251127, at *2–4 (D.N.J. May 19, 2022).

Here, Plaintiff's failures to comply with Court rules and orders have undoubtedly prejudiced the Defendants by hampering discovery and repeatedly halting this case. For large periods of time, Defendants have wasted resources sending documents to the wrong addresses. (*See* ECF Nos. 54, 138). Indeed, on one occasion, the Defendants attempted to arrange a discovery-related conference with Plaintiff, at a facility he had long since departed. (ECF Nos. 137, 138). Additionally, Plaintiff has yet to serve certain new Defendants with summons and the Second Amended Complaint, despite being ordered to do so, nearly a year and a half ago, in September of 2024, further delaying this case. (*See* ECF No. 128, at 1; ECF No. 130 (summons not yet executed)). Finally, the inevitable dimming of witnesses' memories also prejudices the Defendants. *See Hildebrand*, 923 F.3d at 134; *Adams*, 29 F.3d at 874. Plaintiff's claims appear to involve many potential witnesses, and the events in the Second Amended Complaint took place well over four years ago. (ECF No. 129, at 3–6, 13–14). Accordingly, the Court finds that the second *Poulis* factor weighs in favor of dismissal.

### C. History of Dilatoriness

The third *Poulis* factor asks the Court to review the extent and history of Plaintiff's dilatoriness. "Extensive or repeated delays or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874. One or two instances is typically "insufficient," and "[m]ost cases where the court found a history of dilatoriness involved repeated delay." *Hildebrand*, 923 F.3d at 135. For example, in *Poulis*, the Third Circuit emphasized that counsel did not fail to comply in a timely manner on just one occasion but rather demonstrated "a pattern of dilatoriness." *Poulis*, 747 F.2d at 868 ("Time limits imposed by the rules and the court serve an important purpose for

6

the expeditious processing of litigation. If compliance is not feasible, a timely request for an extension should be made."). In addition to repeated failures, "extensive delay can create a history of dilatoriness." *Hildebrand*, 923 F.3d at 135 (cleaned up). "While extensive delay may weigh in favor of dismissal, 'a party's problematic acts must be evaluated in light of its behavior over the life of the case.'" *Id*. (quoting *Adams*, 29 F.3d at 875)).

Here, despite numerous warnings and admonitions, Plaintiff failed to notify the Court of his changed address within seven days pursuant to Local Civil Rule 10.1, on at least four occasions. (ECF Nos. 25, 59, 139, 152). In particular, on two of those occasions, Plaintiff was released for approximately four and five months respectively, prior to filing a notice of change of address. (ECF Nos. 59, 139). Additionally, as mentioned above, Plaintiff has not yet complied with the Court's September 23, 2024, Order to serve the Second Amended Complaint to certain Defendants. (ECF No. 128).

Indeed, Plaintiff's conduct has delayed even the resolution of his own motions. On September 27, 2024, Plaintiff sought to reinstate his motion for judgment as a matter of law and Defendants' cross motion for summary judgment. (ECF No. 133; ECF No. 122 (terminating motions pending decision on motion to amend)). The Court denied the motion to reinstate on October 4, 2024, advising Plaintiff that because the prior motions "were based on, and responsive to" a now inoperative complaint, he must file a proposed amended motion responsive to his Second Amended Complaint. (ECF No. 134, at 1–2). Plaintiff, however, never complied with those instructions. It is possible that he never received that Order, because he had been released nine days prior, on September 25, 2024, and did not notify the Court of his changed address until February 20, 2025. (ECF No. 139, 143). Taken together, the Court finds that Plaintiff's extensive

7

and repeated delays constitute a pattern of dilatoriness, and that this factor weighs strongly in favor of dismissal.

### D. Willfulness or Bad Faith

Under the fourth *Poulis* factor, courts consider whether the party's conduct was willful or in bad faith. *Poulis*, 747 F.2d at 868–69; *see also Adams*, 29 F.3d at 875. When assessing this factor, "a court should look for the type of willful or contumacious behavior that can be characterized as flagrant bad faith, such as failing to answer interrogatories for nearly a year and a half, demanding numerous extensions, ignoring admonitions . . . , and making false promises to correct delays." *Hildebrand*, 923 F.3d at 135 (cleaned up). "Willfulness involves intentional or self-serving behavior." *Id*. (quoting *Adams*, 29 F.3d at 875). A lengthy delay can reflect "'inexcusable negligent behavior,' but that behavior alone does not rise to the level of willfulness or bad faith." *Id*. (quoting *Adams*, 29 F.3d at 876) (citation omitted).

Here, Plaintiff repeatedly ignored this Court's warnings and admonitions regarding his essential duty to remain in contact with the Court. (*See* ECF Nos. 25, 59, 66, 139, 149). The Court's Orders expressly warned Plaintiff that future failure to comply may result in dismissal, or granting Defendants' leave to file a motion to dismiss for failure to prosecute. (*See* ECF Nos. 25, 59, 66, 139, 149). Yet Plaintiff nevertheless repeatedly failed to comply.

Plaintiff contends that his lack of stable housing excuses his conduct, (ECF No. 145, at 2, ECF No. 155, at 1; ECF No. 156, at 1–3), but this case cannot proceed or repeatedly halt, solely based on his housing situation. He asserts that the Court is faulting him for failing to maintain a stable home, but that was *not* what was required of him. Plaintiff was only required to *notify* the Court of any change to his address. A plaintiff experiencing homelessness still bears the "responsibility to keep the . . . Court informed of his whereabouts," and to make "good faith efforts

8

to contact the [C]ourt." *Hall v. Holman*, 265 F. App'x 135, 137 (3d Cir. 2008) (affirming *Poulis* dismissal where plaintiff did not show good faith efforts in notifying the court of his whereabouts during a period of homelessness).

Plaintiff could have contacted the Court by mail, or the Clerk's Office by phone or in person, to advise that he had been released, and sought, for example, a stay of the matter until he found stable housing. Had he done so, within a reasonable time, it would have at least shown good faith effort, but that did not occur. Instead, Plaintiff caused the Court and Defendants to send numerous documents to facilities Plaintiff had, at times, long since departed and caused this case to sit idle.

Perhaps the most obvious signs of willful misconduct occurred after Plaintiff's release from the Queensboro Correctional Facility on September 25, 2024. (ECF No. 138). The Court expressly warned Plaintiff that if he failed "to advise the Court of a future change in address, within seven days," (ECF No. 66, at 1), the Court would grant Defendants leave to file a motion to dismiss. (ECF Nos. 139, 144, at 1–2). Yet Plaintiff did not contact the Court until February 20, 2025, nearly five months after his release, when he filed a motion to reopen. (ECF No. 143). In that motion, despite numerous prior warnings and admonitions, he advised that he "did not feel like updating his address was necessary" because he believed the facility would forward his mail to his parole officer who would then forward it to Plaintiff. (*Id.*).

Nor can Plaintiff claim that he was unable to contact the Court any earlier, as during that five-month period, he initiated multiple federal cases and *actively litigated* during that time. *See Lurch Jr. v. The Supervising Officer*, Civ. No. 25-819 (S.D.N.Y.) (filed January 23, 2025); *Lurch, Jr. v. NYCHHC*, Civ. No. 25-579 (E.D.N.Y.) (transferred from S.D.N.Y. on February 3, 2025); *Lurch Jr. v. Any and All Doctors*, Civ. No. 25-820 (S.D.N.Y.) (filed January 23, 2025); *Lurch v.*

9

*NYSDOCCS*, Civ. No. 24-6744 (W.D.N.Y.) (transferred from S.D.N.Y. on December 26, 2024); *Lurch, Jr. v. NYCHHC*, Civ. No. 24-8923 (S.D.N.Y.) (filed November 21, 2024); *Lurch, Jr. v. NYSDOCCS*, Civ. No. 24-8920 (S.D.N.Y.) (filed November 21, 2024).  Additionally, during the four-month period between Plaintiff's release on April 23, 2023, (ECF No. 54), and filing his notice of change of address on August 14, 2023, (ECF No. 63), Plaintiff filed three other federal cases. *See Lurch, Jr. v. Pilgrim*, Civ. No. 23-6727 (S.D.N.Y.) (filed July 31, 2023); *Lurch, Jr. v. Gorman*, Civ. No. 23-6704 (S.D.N.Y.) (filed July 28, 2023); *Lurch, Jr. v. The City of New York*, Civ. No. 23-5249) (S.D.N.Y.) (filed June 20, 2023).

Despite Plaintiff's conduct, on August 28, 2025, the Court terminated Defendants' motion to dismiss, and provided him with one "**final** opportunity to remain compliant " with Local Civil Rule 10.1, and that "[a]ny future failure to promptly notify the Court of an address change or the loss of a permanent address, **will result in the immediate reinstatement of Defendants' motion to dismiss and dismissal of this action**." (ECF No. 149, at 1 (emphasis in original)). Nevertheless, on December 3, 2025, the Court sent mail to Plaintiff at the Adult Diagnostic Treatment Center, in New Brunswick, New Jersey, that returned as undeliverable. (ECF No. 152). Plaintiff had characterized the treatment center as a "temporary address" and said that he would "update the Court when it changes." (ECF No. 150).  But he did not file a notice of change of address until more than two months later, on February 13, 2026. (ECF No. 154).

These circumstances demonstrate that Plaintiff was aware of his responsibilities and the Court's Orders, warnings, and admonitions.  His continued failures to comply, especially while litigating other cases, lead the Court to conclude that his conduct was intentional, *i.e.*, willful.  The record does not reflect confusion or inability, but rather, a conscious decision not to comply. Accordingly, the Court finds that the fourth *Poulis* factor weighs strongly in favor of dismissal.

### E. Effectiveness of Alternative Sanctions

The fifth *Poulis* factor requires the Court to consider the effectiveness of alternative sanctions. In this context, the Court assesses whether alternative sanctions would compel Plaintiff to comply with the Court's rules and orders. Other than dismissal, possible alternatives include "a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees," administrative termination, striking a pleading in part, and evidentiary sanctions. *Caffrey v. Scott*, No. 10-5055, 2011 WL 4528169, at *4 (D.N.J. Sept. 28, 2011) (quoting *Titus v. Mercedes Benz of North America*, 695 F.2d 746, 750 n. 6 (3d Cir.1982)); *see also Windish v. 3M Co.*, No. 23-1531, 2024 WL 1604012, at *7–8 (E.D. Pa. Apr. 12, 2024). "The effectiveness of alternative sanctions depends in part on their ability to preserve the integrity of the courts and deter future misconduct." *E.g.*, *Windish*, 2024 WL 1604012, at *7 (cleaned up).

Here, as Plaintiff is proceeding *pro se* and *in forma pauperis*, monetary sanctions would not be effective or appropriate. *E.g.*, *Briscoe*, 538 F.3d at 262–63 (citing *Emerson*, 296 F.3d at 191). Further warnings and reprimands are not likely to be effective, as the Court has already provided several, increasingly stern warnings and admonitions. (*See* ECF Nos. 25, 59, 66, 139, 149). Similarly, the Court has already terminated this case on several occasions. (*See* ECF Nos. 25, 59, 139). None of those measures secured sustained compliance.

Next, placing the case at the bottom of the calendar would be counterproductive to the goal of ensuring prompt prosecution. Evidentiary sanctions are likewise ill-suited. They regulate proof, not participation, and would likely have no meaningful effect on Plaintiff's willingness to comply with his basic obligation to remain in contact with the Court. Finally, striking portions of the Second Amended Complaint would accomplish little, because it would leave the remaining claims subject to the same pattern of noncompliance. Nor would it advance the case, given that the

11

Second Amended Complaint has remained unserved for nearly a year and a half. (*See* ECF No. 129 (ordering Plaintiff to serve the Second Amended Complaint); ECF No. 130 (summons not yet executed)). For those reasons, the Court finds that there are no alternative sanctions that will effectively compel Plaintiff's cooperation. Consequently, this factor weighs in favor of dismissal.

### F. Meritoriousness of Claims

The final *Poulis* factor requires assessing the potential merits of Plaintiff's claims. "In determining whether a plaintiff's claim is meritorious, a court must use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Briscoe*, 538 F.3d at 263 (citing *Poulis*, 747 F.2d at 869–70). Thus, a claim is "meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff." *Id.* (quoting *Poulis*, 747 F.2d at 869–70).

Here, the Court applied that standard when it screened the original complaint and allowed it to proceed, (*see* ECF No. 35), and the Court implicitly found that the claims in the Second Amended Complaint had potential merit when it granted Plaintiff's motion to amend, (*see* ECF No. 129, 117). Thus, while not a full decision on the merits of Plaintiff's claims, this factor weighs against dismissal.

### G. Balancing

The Court considers five of the *Poulis* factors to weigh in favor of dismissal and one factor to weigh against dismissal. The number of factors is not dispositive, as "there is no magic formula or mechanical calculation." *Hildebrand*, 923 F.3d at 137 (cleaned up); *Ware*, 322 F.3d at 225 (finding that not all six factors are required to merit dismissal); *Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 696 (3d Cir. 1988) (concluding that the absence of one factor is not controlling).

The Court acknowledges that Plaintiff's claims may have potential merit, but that single factor does not outweigh the others. The record reflects repeated, extended, and willful noncompliance with the Court's rules and Orders, a clear history of dilatoriness, and resulting prejudice to the Defendants, despite numerous warnings and opportunities to comply. And no lesser sanction would be effective in securing Plaintiff's compliance. In these circumstances, the *Poulis* factors weigh decisively in favor of dismissal. While failing to notify the Court of a changed address may not at first glance seem to be of the nature warranting dismissal, and the Court does not suggest it is appropriate in all cases, when it repeatedly occurs over a long period of time and causes the case to be stagnant such as here, dismissal is indeed appropriate.

Finally, the Court recognizes that dismissal may effectively bar Plaintiff from refiling due to the statute of limitations, but the Court declines to dismiss this action with prejudice. Although dismissal is warranted under *Poulis*, dismissal with prejudice would constitute a more severe sanction than necessary under the circumstances. On the present record, the Court cannot conclude that equitable tolling would be unavailable should Plaintiff seek to reassert his claims. The Court will therefore dismiss the case without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part Defendants' motion to dismiss and dismiss this case without prejudice. An appropriate Order follows.

Dated: March 20, 2026

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**

13